UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIDGE FINANCIAL PTY LTD,<br><br>          Plaintiff,<br><br>     -v-<br><br>RPE I INVESTOR I, LLC, et ano.,<br><br>          Defendants. | 23-cv-11230 (JSR)<br><br><u>OPINION</u> |

JED S. RAKOFF, U.S.D.J.:

On February 5, 2024, defendants RPE Investor I, LLC ("RPE I") and Republic Financial Corporation ("RFC") moved to dismiss the complaint in its entirety. See Notice of Mot. to Dismiss, ECF No. 19; Mem. of Law in Supp. of Defs. Mot. to Dismiss ("Defs. Opening Br."), ECF No. 22. After full consideration of the parties' written submissions, the Court granted in part and denied in part the motion to dismiss by "bottom-line" order dated April 1, 2024. See 4/1/24 Order, ECF No. 26. Specifically, the Court dismissed the claim for breach of the implied covenant of good faith and fair dealing but permitted the breach of contract claim to proceed against both defendants. Id. This Opinion reconfirms that order and explains the reasons for that ruling.

## I.   Plaintiff's Allegations

On April 30, 2013, plaintiff Bridge Financial Pty Ltd ("Bridge Financial") signed a promissory note, whereby it assigned its Limited Partner interest in Republic Private Equity I, LLP (the "Fund") to RPE

1

I. Compl., ¶¶ 1, 10, ECF No. 1. In exchange, RPE I promised to pay plaintiff $4,330,052 (plus annual interest of 14.5%) by December 29, 2017. Id. ¶ 11. RFC is not a signatory to the promissory note. See Shupe Decl., Ex. A ("Promissory Note"), ECF No. 21-1. However, RFC is the sole member and owner of RPE I, and its President, Robert Possehl, is RPE I's manager. Compl., ¶¶ 5, 14.

On August 24, 2017, plaintiff received a "Buy-Out" option from Mr. Possehl, in his capacity as manager of the General Partner of the Fund, in which "RFC offer[ed] to purchase all of the Fund's Limited Partner interests for a small fraction of their invested capital." Id. ¶ 24. In response, plaintiff "demanded that [d]efendants provide the identities of all other Limited Partners in the Fund, and sought clarification as to why the Buy-Out amounted to approximately 43% of all [limited partner] interests instead of the 50% that [plaintiff] understood RPE I's [limited partner] interest in the Fund to be." Id. ¶ 25. Plaintiff did not receive the information it requested. Id. ¶ 26.

More than a year later, in October 2018, plaintiff learned "that the proposed buy-out . . . had been approved by more than 80% of the Limited Partners -- including RPE I, which was controlled by RFC -- and that the Fund was officially shuttered" as of November 2017. Id. ¶¶ 27, 30. Plaintiff was also informed that RPE I was holding the distribution from the buy-out (but not the "[c]ollateral that was pledged as security" in the promissory note) and that RFC would be

willing pay the distribution amount to plaintiff "in final satisfaction of obligations owed under the" promissory note. Id. ¶¶ 27, 30.

The complaint alleges that RPE I breached three of its obligations under the promissory note: (1) the "obligation to repay to [p]laintiff the [p]rincipal and [f]ixed [i]nterest amount by the Maturity Date"; (2) the "obligation not to sell, transfer or otherwise dispose of the [c]ollateral until [p]laintiff was fully repaid on the [promissory] [n]ote"; and (3) the "obligation to pay over Fund distributions to [plaintiff]." Id. ¶¶ 38-40. The complaint further avers that "RFC is liable for RPE I's breaches of contract under an alter ego and/or veil piercing analysis." Id. ¶¶ 41, 46. Plaintiff asserts two claims against defendants, breach of contract and breach of the implied covenant of good faith and fair dealing, and seeks $20,372,603.50 in monetary damages. Id. ¶¶ 35-47.

## II.  Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1] A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). If a

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. at 570. However, the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

## III. Discussion

Defendants argue that the breach of contract claim must be dismissed because the promissory note is non-recourse and the complaint otherwise fails to plead the prima facie elements of a breach of contract claim. Defendants also argue the breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative. Finally, defendants argue that if the claims are not otherwise dismissed against RPE I, the claims must be dismissed against RFC because the complaint fails to adequately plead a basis for alter ego liability. For the reasons discussed below, the Court finds that the claim for breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative but that the breach of contract claim should proceed against both defendants.

### a. Consideration of the Parties' Exhibits

As a threshold matter, the Court must decide whether it can consider the exhibits that defendants and plaintiff submitted with their briefing. Defendants submitted two exhibits: the promissory note and the proposed "buy-out" option. See Promissory Note; Shupe Decl.,

Ex. B, ECF No. 21-2. Plaintiff submitted one exhibit: email negotiations between defendants and plaintiff from October and November of 2018. Murphy Decl., Ex. B., ECF No. 24-2.

A complaint is deemed to contain a document if any one of three conditions is satisfied. First, the complaint may attach the document or incorporate it by reference. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Second, the complaint may "rel[y] . . . upon [a document's] terms and effect" to such an extent that the document is "integral" to the complaint. Id. See also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Third, the document may be subject to judicial notice. See Fed. R. Evid. 201(b).

The Court finds that defendants' two exhibits are properly considered as integral to the complaint. First, the Court can consider the promissory note because a contract "by definition is integral to the complaint." Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017). See also See Chambers, 282 F.3d at 153-54. Second, the proposed "buy-out" option is integral to the complaint because "plaintiff rel[ied] on the terms and effect of [the proposed option] in drafting the complaint," as the proposed option is "necessary to the short and plain statement of the claim showing that . . . plaintiff is entitled to relief." Lateral Recovery, LLC v. Cap. Merch. Servs., LLC, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022).

However, plaintiff's exhibit is not properly before the Court at this stage of the proceedings. As the email negotiations that plaintiff submitted are plainly not subject to judicial notice or attached to the complaint, the only two avenues through which the Court could consider plaintiff's exhibit is if it is incorporated by reference or integral to the complaint. To start, the email negotiations are not incorporated by reference because the complaint does not "make a clear, definite, and substantial reference" to them. Id. at 436. Instead, the complaint makes only one allegation related to two of the emails included in the exhibit. Compl., ¶ 27. Furthermore, plaintiff has essentially conceded that the email negotiations are not integral to the complaint. In its opposition brief, plaintiff admitted that "not all of the information contained in [its exhibit] was directly alleged in the [c]omplaint, because it was not necessary" and was only "include[d] . . . for context." Pl. Mem. in Opp'n to Mot. to Dismiss, at 6, ECF No. 23. That is nothing more than a thinly veiled attempt to impermissibly amend the complaint through motion to dismiss briefing. See, e.g., O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005). The Court will accordingly not consider plaintiff's exhibit when assessing whether the complaint passes muster under Rule 12(b)(6).

b. **Breach of Contract**

The Court now turns to the merits. Under New York law, a breach of contract claim has four elements: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." <u>Martinez v. Agway Energy Servs., LLC</u>, 88 F.4th 401, 409 (2d Cir. 2023).[2] Here, defendants argue that plaintiff has failed to adequately allege a breach of contract claim for three reasons. First, the promissory note is non-recourse. Second, the complaint has not adequately alleged that plaintiff performed its obligations under the promissory note. Third, the complaint has not adequately alleged a breach of the promissory note that resulted in damages. For the reasons explained below, the Court finds defendants' arguments to be without merit and will permit the breach of contract claim to proceed.

i. **Non-Recourse**

Defendants first argue that the breach of contract claim must be dismissed because the promissory note is non-recourse. According to defendants, the non-recourse provision in the promissory note means that plaintiff cannot sue RPE I or RFC for breach of contract or monetary damages. Instead, defendants maintain that plaintiff may only proceed against the collateral. Defendants are wrong.

---

[2] New York law applies to the breach of contract claim because of the choice-of-law provision in the promissory note. <u>See</u> Promissory Note, § 16.

Section 7 is the non-recourse provision of the promissory note. It states, "Notwithstanding anything to the contrary in this Note or any other document whatsoever, all obligations of [RPE I] evidenced by this Note shall be limited solely to the Collateral and shall be non-recourse to [RPE I] and its affiliates, shareholders, directors, managers, officers, employees and agents." Promissory Note, § 7. In general, "[n]on-recourse provisions," like this one, "are enforceable under New York state law." In re Taberna Preferred Funding IV, Ltd., 594 B.R. 576, 588 (Bankr. S.D.N.Y. 2018). And, to discern the meaning of the non-recourse provision, the Court must construe it "according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). Here, defendants' interpretation is belied by the plain meaning of the terms of the non-recourse provision.

To start, defendants' interpretation is contrary to the settled meaning of the term "non-recourse." Non-recourse does not mean, as defendants contend, that plaintiff cannot sue them for a monetary judgment. Rather, all that "non-recourse" means is that plaintiff's recovery is limited to the value of the collateral pledged as security. See, e.g., DeFlora Lake Devs. Assocs., Inc. v. Hyde Park, 13-CV-4811, 2016 WL 7839191, at *2 (S.D.N.Y. June 9, 2016) (finding that plaintiff was "entitled only to the foreclosure price paid from sale of the [p]roperty with no deficiency or monetary judgment" because the debt was non-recourse); Spirit Realty, L.P. v. GH & H Mableton, LLC, 227 F. Supp. 3d 291, 295 (S.D.N.Y. 2017) ("The loan was structured as a 'non-recourse' loan, meaning that if Spirit LLC defaulted, the lender's

recovery would be presumptively limited to the value of the property and the lender's right to foreclose."); <u>ING Real Estate Fin. (USA) LLC</u> <u>v. Park Ave. Hotel Acquisition LLC</u>, 907 N.Y.S.2d 437 (Table) (Sup. Ct. 2010) ("The debt is non-recourse meaning, absent certain limited acts by the [b]orrower, plaintiffs agreed to limit recovery on the debt to the proceeds of the sale of the property through foreclosure."). Defendants appear to implicitly concede that plaintiff is entitled to the value of the collateral, as defendants state in their opening brief that plaintiff had a right to recover the funds that RPE I received in exchange for selling the collateral. <u>See</u> Defs. Opening Br., at 9.

An additional problem with defendants' interpretation is that it would require reading absent language into the parties' contract. The relevant provision provides that RPE I's "obligations . . . shall be limited solely to the Collateral and shall be non-recourse to [RPE I]." Promissory Note, § 7. The provision does <u>not</u> state that plaintiff may only proceed against the collateral or that plaintiff cannot sue defendants for breach of contract. Defendants attempt to support reading such a limitation into the contract based on other cases. But their attempt is unavailing, as those cases are factually inapposite or support plaintiff's right to sue. <u>See</u> <u>Gupta Realty Corp. v. Gross</u>, 251 A.D.2d 544, 545 (2d Dep't 1998) (affirming the dismissal of a breach of contract claim based on a much more specific "nonrecourse clause, which provided that in the event of default, [plaintiff's] sole remedy was to foreclose on the mortgages"); <u>Bronxville Knolls v.</u>

Webster Town Ctr. P'ship, 221 A.D.2d 248, 248 (1st Dep't 1995) (holding the plaintiff could not seek "a personal judgment" because a non-recourse provision "established the intention of the parties that the only recourse in connection with the underlying loan was the mortgaged property," whereas here, the underlying collateral has been converted into money that defendants concede belongs to plaintiff); Adams v. Fountains Senior Props. of N.Y., Inc., 38 A.D.3d 804, 805 (2d Dep't 2007) (lending support to plaintiff's right to sue because the Court there found that plaintiff established a breach of contract claim but found the judgment should be "limit[ed] [to] the enforcement of the judgment" against the specified funds in the "nonrecourse clause"). The Court accordingly declines defendants' invitation to read absent language into the contract. See In re Musicland Holding Corp., 386 B.R. 428, 438 (S.D.N.Y. 2008) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.").

In sum, the non-recourse provision is best understood as limiting plaintiff's recovery to the value of the collateral, not precluding a lawsuit for a monetary judgment all together. This case is thus similar to McMahan & Co. v. Bass, where the First Department held that a party could sue "for breach of contract by reason of plaintiffs' failure to pay the entire purchase price due under the contracts" but that "[a]ny recovery [would be] . . . limited to the assets pledged as security for the payment of plaintiffs' obligations pursuant to the nonrecourse

provisions of the contracts." 250 A.D.2d 460, 462 (1st Dep't 1998).
The Court accordingly concludes that the non-recourse provision does
not require the dismissal of plaintiff's claims. Instead, plaintiff
may proceed with its claims; however, the non-recourse provision will
likely limit plaintiff's recovery to the value of the collateral.[3]

### ii. **Plaintiff's Performance**

Defendants next argue that the breach of contract claim must be
dismissed because plaintiff has failed to adequately allege that it
performed its obligations under the promissory note, i.e., negotiating
in good faith an extension of the Maturity Date upon receipt of the
proposed buy-out option. See, e.g., Chappo & Co., Inc. v. Ion
Geophysical Corp., 83 A.D.3d 499, 500 (1st Dep't 2011). The Court
disagrees.

The relevant provision requires plaintiff and RPE I to "negotiate
in good faith an extension of the Maturity Date" if the principal and
interest is unpaid as of the Maturity Date or "if 90-days prior to the
Maturity Date it is reasonably unlikely" that the principal and
interest will be repaid on the Maturity Date. Promissory Note, § 1.
The facts before the Court indicate that the obligation to negotiate
in good faith was triggered, as the promissory note states the Maturity
Date is December 29, 2017 but the proposed buy-out (dated August 23,

---

[3] The fact that plaintiff is seeking $20 million in damages does not
go to the validity of its cause of action but rather raises a factual
question about the appropriate measure of damages that can be
definitively resolved at a later stage of the proceedings.

2017) indicated "it is highly unlikely that the Note will be satisfied on or before its scheduled maturity." Id.; Shupe Decl., Ex. B, at 3.

The complaint adequately alleges, however, that plaintiff complied with its contractual obligation to negotiate in good faith. The complaint avers that upon receiving the buy-out proposal, plaintiff "demanded that [d]efendants provide the identities of all other Limited Partners in the Fund, and sought clarification as to why the Buy-Out proposal amounted to approximately 43% of all LP interests instead of the 50% that [plaintiff] understood RPE I's LP interest in the Fund to be." Compl., ¶ 25. Defendants then refused to provide the requested information. Id. ¶ 26. "[D]rawing all reasonable inferences in the plaintiff's favor," as the Court must, the allegations indicate that plaintiff attempted to engage in good faith negotiations by requesting further information but was stymied when defendants failed to provide the requested information. See Goldstein, 516 F.3d at 56. Defendants counter that these allegations are insufficient because the alleged request for information does not "reference any possible extension of the Maturity Date." Defs. Reply Mem. of Law in Further Supp. of Mot. to Dismiss, at 4, ECF No. 25. But whether plaintiff's request for information satisfied plaintiff's obligations under the contract to negotiate in good faith if there was no explicit reference to an extension of the Maturity Date is a question of fact that cannot be resolved on a motion to dismiss. The Court accordingly concludes that the complaint adequately alleges that plaintiff performed its obligations under the promissory note.

### iii. __Breach and Damages__

Finally, defendants argue that the complaint has failed to adequately allege a breach of the promissory note that resulted in damages. Once again, the Court disagrees.

Although the complaint alleges that three of RPE I's obligations were breached, the Court focuses its analysis on whether the complaint adequately alleges that RPE I breached its obligation "to repay to [p]laintiff the [p]rincipal and [f]ixed [i]nterest amount by the Maturity Date." See Compl., ¶ 38. The reasonable inference from the allegations in the complaint is that as of the Maturity Date of December 29, 2017, plaintiff had not received the principal and interest due under the promissory note and thus was damaged. See id. ¶ 27 (alleging that plaintiff was informed in October 2018 that RPE I was holding plaintiff's distribution from the buy-out); id. ¶ 42 (alleging damages are at least the amount of the unpaid principal and interest as of December 27, 2023). Defendants counter that these allegations are insufficient because the promissory note provides that "the Maturity Date was December 29, 2017[,] *unless* RPE I, as Maker, did not pay on that date -- in which case a negotiated extension 'shall be applicable,'" and thus when "RPPE I failed to pay the principal and interest on December 29, 2017, the original Maturity Date became a nullity." Defs. Opening Br., at 12-13. That, however, misreads the terms of the promissory note.

The relevant provision provides that RPE I and plaintiff "shall negotiate in good faith an extension of the Maturity Date . . . which

13

extension shall be applicable if [RPE I] does not pay the outstanding principal balance of this Note and any accrued and unpaid Fixed Interest thereon on or prior to the Maturity Date." Promissory Note, § 1. The plain meaning of this provision is that the parties must negotiate an extension in good faith, and if such an extension is negotiated, it must apply if RPE I does not pay plaintiff by the Maturity Date (December 29, 2017). However, contrary to defendants' position, this provision does not mean that the Maturity Date _must_ be extended if RPE I fails to pay plaintiff by December 29, 2017. The fact that the parties were contractually obligated to engage in good faith negotiations does not mean the parties were obligated to come to an agreement with respect to an extension. See IDT Corp. v. Tyco Grp., S.A.R.L., 23 N.Y.3d 497, 502-03 (2014) ("There is such a thing as a good faith impasse; not every good faith negotiation bears fruit."). Furthermore, the default provisions of the promissory note indicate that December 29, 2017 does not become a nullity if the amount is unpaid by that date. Instead, the promissory note provides that if "the outstanding principal balance of this [n]ote plus accrued and unpaid [f]ixed [i]nterest thereon on the Maturity Date" is unpaid, that is an event of default that makes all of RPE I's obligations come due immediately. Promissory Note, § 6(a)(ii). Defendants' position, that the Maturity Date must always be extended if it cannot be met, would render this provision meaningless. The Court accordingly declines to adopt it. See Solco Plumbing Supply, Inc. v. Hart, 123 A.D.3d 798, 800 (2d Dep't 2014) ("[I]n determining the meaning of

contractual language, a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous.").[4]

In sum, the complaint adequately alleges that the obligation to repay the principal and interest on the Maturity Date was breached. And because the complaint adequately alleges that this obligation was breached, the Court need not reach defendants' arguments about the other two obligations that were purportedly breached.

### c. Breach of the Implied Covenant

Defendants argue that the claim for breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative of the breach of the contract claim. The Court agrees. The Court is permitting the breach of contract claim to proceed forward. And because the claim for breach of the implied covenant of good faith and fair dealing is based on the same facts as the breach of contract claim, the claim predicated on the breach of the implied covenant must be dismissed as duplicative. See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."). Accord Zam & Zam Super Mkt., LLC v. Ignite Payments,

---

[4] It would be premature to reach defendants' argument that if good faith negotiations did not occur, the Maturity Date is unenforceable. That assumes facts that have not yet been established, namely that good faith negotiations did not occur.

LLC, 736 F. App'x 274, 278-79 (2d Cir. 2018); JN Contemp. Art LLC v. Phillips Auctioneers LLC, 29 F.4th 118, 128 (2d Cir. 2022).

### d. **Alter Ego Liability**

Because the Court finds that the breach of contract claim is otherwise adequately pled in the complaint, the Court must decide whether that claim can proceed against RFC, or only against RPE I. Because RFC is not a signatory to the promissory note, the only basis upon which it can be held liable for breach of contract is if the corporate veil is pierced. See Promissory Note; Paguirigan v. Prompt Nursing Emp. Agency LLC, 286 F. Supp. 3d 430, 440-41 (E.D.N.Y. 2017). Defendants argue alter ego liability is inadequately pled and thus the breach of contract claim must be dismissed against RFC.[5] That is wrong.

"Under New York choice-of-law principles, the issue of whether the corporate veil may be pierced is determined under the law of the state of incorporation." In re Digit. Music Antitrust Litig., 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011). See also Tayyib Bosque, Corp. v. Emily Realty, LLC, 813 F. App'x 628, 630 (2d Cir. 2020); Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); Sweeney, Cohn, Stahl & Vaccaro v. Kane, 773 N.Y.S.2d 420, 423 (2d Dep't 2004). Because RFC is incorporated in Colorado, the Court will apply Colorado law to

---

[5] It is unclear if defendants are attempting to argue that even if alter ego liability is adequately alleged in the complaint, the Court lacks personal jurisdiction over RFC. However, to the extent defendants are making that argument, the Court finds that it is waived because it was only made in a footnote. See Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC, 366 F. Supp. 3d 516, 563 n.28 (S.D.N.Y. 2018).

determine whether corporate veil piercing is adequately alleged. Compl., ¶ 6. Under Colorado law, "a court may disregard the shield that the LLC form would normally provide for its members when (1) the entity is merely the alter ego of the member, (2) the LLC form is used to perpetrate a wrong, and (3) disregarding the legal entity would achieve an equitable result." Griffith v. SSC Pueblo Belmont Operating Co. LLC, 381 P.3d 308, 313 (Colo. 2016). The complaint adequately alleges each element.

Starting with the first element, "[a]n alter ego relationship exists when the corporation is a mere instrumentality for the transaction of the shareholders' own affairs, and there is such a unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." In re Phillips, 139 P.3d 639, 644 (Colo. 2006). To determine whether this element is satisfied, "courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a mere shell, (7) shareholders disregard legal formalities, and (8) corporate funds and assets are used for noncorporate purposes." Id. See also Griffith, 381 P.3d at 313 (listing eleven similar factors). "In the alter ego analysis, no one factor is determinative," so "the Court looks to the entirety of the allegations and asks whether the subsidiary was

functionally doing the business of or acting as a mere instrumentality for the parent rather than acting as a separate but related entity." Belfer v. Arlington Cap. Partners, LP, 22-cv-01501, 2023 WL 1069489, at *5 (D. Colo. Jan. 27, 2023), report and recommendation adopted, 2023 WL 2824468 (D. Colo. Feb. 16, 2023).

Here, the complaint alleges that RFC exercises total control over RPE I, that there is an overlap in officers between RFC and RPE I, that corporate formalities were not observed, and that RFC used RPE I's assets for its own benefit. Specifically, the complaint that RFC is the "sole Member Owner" of RPE I and RFC's president is RPE I's manager; thus, "RFC . . . exercised complete and total dominion and control over RPE I's activities." Compl., ¶¶ 3, 5. The complaint further alleges that RFC's president "consented to RPE I's purchase of [plaintiff's] interest in the Fund," and that "Randy Dietrich of [RFC] signed the Note as 'President' of RPE I," listing an address for RPE I that was the same as the address for RFC. Id. ¶¶ 14, 18. The complaint further alleges that "[d]efendants all share the same office space, address, telephone numbers and email handles." Id. ¶ 33. The complaint then alleges that when plaintiff inquired about its collateral in 2017, the response came from RFC's CFO and Treasurer, Dennis Bikun, from his RFC email account. Compl., ¶¶ 21-23, 25-26. And it was Mr. Bikun who told plaintiff "that the proposed buy-out . . . had been approved by more than 80% of the Limited Partners -- including RPE I, which was controlled by RFC -- and that the Fund was officially shuttered" and that "RPE I was maintaining [plaintiff's]

distribution," which "RFC was ready to make [as a] . . . payment to plaintiff in final satisfaction of obligations owed under the Note." Id. ¶ 27. Finally, the complaint alleges that RFC: (1) "commingled assets belonging to RPE I with those of itself and other affiliated entities"; (2) "used assets belonging to RPE I to enrich itself and other affiliated persons and entities"; (3) "engaged in disloyalty and self-dealing with respect to RPE I['s] assets to the detriment of [plaintiff]"; and (4) "used RPE I's assets for its own purposes, including engaging in self-dealing with the Collateral." Id. ¶ 32.

In the face of this mountain of allegations, defendants still attempt to argue that the first element is not adequately plead but to no avail. First, defendants argue that the allegations related to the failure to adhere to corporate formalities and RFC's use of RPE I's assets for its own gain are conclusory. The Court disagrees because the complaint includes specific factual allegations that show the misuse of assets and failure to observe corporate formalities. The complaint specifically alleges that RFC caused RPE I to approve the sale of plaintiff's collateral to RFC without plaintiff's consent, which caused RPE I to sell the collateral in violation of its obligations under the promissory note. See id. ¶¶ 1, 3, 29. That adequately alleges a misuse of assets. The complaint also alleges that RFC communicated with plaintiff about the collateral and buy-out, offered to pay RPE I's debt to plaintiff, and "share[d] the same office space, address, telephone numbers and email handles" with RPE I. Id.

¶¶ 21-23, 25-27, 33. Those allegations are sufficient to plead a failure to adhere to corporate formalities.

Defendants next argue that the overlap in officers and failure to adhere to corporate formalities are insufficient standing alone to pierce the corporate veil. See Colo. Rev. Stat. Ann. § 7-80-107(2); Sedgwick Props. Dev. Corp. v. Hinds, 456 P.3d 64, 73 (Colo. App. 2019); Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC, No. 20-cv-1413, 2021 WL 877716, at *4 (D. Colo. Mar. 9, 2021); Dill v. Rembrandt Grp., Inc., 474 P.3d 176, 188 (Colo. App. 2020). It is true as far as it goes that each factor individually may be insufficient to find that RFC is an alter ego of RPE I. But these are not the only factors adequately alleged in the complaint, and nothing prevents the Court from considering these factors, among other factors, in assessing whether the complaint adequately alleges a basis for alter ego liability. The Court accordingly finds the first element is adequately alleged.

Turning to the second element, plaintiff "must show that justice requires that the entity's form be disregarded because the entity was merely a fiction used to perpetrate a fraud or defeat a rightful claim." Griffith, 381 P.3d at 313. "Only when the corporate form was used to shield a dominate shareholder's improprieties may the veil be pierced." In re Phillips, 139 P.3d at 644.

Here, the complaint adequately alleges the second element. The complaint alleges that RFC "abused its controlling position [in RPE I] to approve a transaction whereby RPE I would sell its interest in

the Fund to the one and only buyer who had come forward -- that is RFC, itself," which was "brazen self-dealing [that] constitutes a blatant violation of obligations owed under the [promissory] [n]ote." Compl., ¶ 3. The complaint further alleges that "RPE I's Manager, [Mr.] Possehl, who at the same time was . . . the President of the 'buyer', RFC," is the one who voted in favor of selling RPE I's collateral to RFC, all without plaintiff's consent. Id. ¶¶ 27, 29. The complaint alleges that the end result of this transaction was that "RPE I no longer held any [c]ollateral that was pledged as security on the [promissory] [n]ote." Id. ¶ 30. Drawing all reasonable inferences in plaintiff's favor, the complaint adequately alleges that RFC used its controlling interest in RPE I to cause RPE I to breach RPE I's contractual obligations to plaintiff for RFC's own benefit, as the buyer of the collateral. These allegations thus show that not disregarding the corporate form would allow RFC to avoid liability for its part in a self-dealing transaction. The allegations in the complaint are thus sufficient to satisfy the second element. See Vail Summit Resorts, Inc. v. Zip-Flyer, LLC, 18-cv-1763, 2020 WL 3469703, at *4 (D. Colo. June 25, 2020) (finding that the allegation that an individual "used [the] corporate form of [two limited liability companies] . . . to avoid the contractual obligations owed to [Plaintiff] under the [c]ontract . . . plausibly pleaded that the

corporate form was used to perpetrate a fraud or defeat a rightful claim.").[6]

Finally, for the third element, "the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." In re Phillips, 139 P.3d at 644. Defendants argue that this element is not satisfied because the promissory note was non-recourse and RFC did not guarantee RPE I's obligations. The Court disagrees. The complaint plausibly alleges that RFC abused the corporate form and then offered to pay $432,608 "in final satisfaction of obligations owed under the [promissory] [n]ote." See Compl., ¶ 27. Worse yet, it is not clear whether RPE I or RFC is holding the recoverable assets. See id. (alleging RPE I is holding the distribution but RFC is the one who offered to pay it); id. ¶ 30 ("RPE I no longer held any Collateral that was pledged as security on the Note."). Accordingly, to not permit veil piercing would sanction an inequitable result, regardless of whether the promissory note is non-recourse or RFC explicitly guaranteed RPE I's obligations or not. The Court thus finds the third element is adequately alleged.

---

[6] Defendants' arguments to the contrary -- that "the [c]omplaint does not allege [the transaction] . . . was used to shield any improprieties on [RFC's] part" and "RPE I repeatedly inform[ing] [p]laintiff it was maintaining the consideration paid for . . . the [c]ollateral for plaintiff" cannot be "reconcile[d]" with the "conclusory allegations of self dealing" -- are nothing more than an impermissible attempt to draw inferences in defendants' favor based on allegations in the complaint. Defs. Opening Br., at 22-23.

In sum, the Court concludes that alter ego liability has been adequately alleged and thus denies the motion to dismiss the breach of contract claim against RFC.

## IV.   Conclusion

For the reasons explained above, the Court dismisses the claim for breach of the implied covenant of good faith and fair dealing but otherwise denies the motion to dismiss.

New York, NY
April 25, 2024

JED S. RAKOFF, U.S.D.J.